MARIE C. THOMPSON, Appellant, *vs.* GEORGETTE KARME *et al.* Appellees.

*Opinion filed April 22, 1915—Rehearing denied June 11, 1915.*

1. WILLS—*when presumptions will be indulged in favor of due execution and attestation of a will.* Where a will has apparently been executed in due form and the signatures of the testator and attesting witnesses are admitted to be genuine, no presumption will be indulged to destroy the validity of the instrument but every reasonable presumption will be indulged in favor of its due execution and attestation.

2. SAME—*what makes a prima facie case in favor of due execution of a will.* Where it appears that the signature to the will produced for probate is the genuine signature of the testator and that the two subscribing witnesses signed in his presence, a *prima facie* case is made in favor of the due execution of the will; and this *prima facie* case is not overcome by the mere fact that the subscribing witnesses testify that they failed to notice whether the will was signed.

3. SAME—*when mistake in date of the attestation clause is not fatal.* The fact that the date both in the testamentary clause and in the attestation clause is December 25, whereas the subscribing witness who remembers the transaction testifies that both witnesses signed the attestation clause on December 24, does not render the will invalid upon the alleged ground the will was therefore not signed by the testator when it was attested, where the other evidence tends to show that the will was signed by the testator at the time it was attested and that the date in both clauses should have been December 24.

4. SAME—*what does not authorize denying probate of will.* If a will is apparently regular in form and the signatures of the testator and of the subscribing witnesses are admittedly genuine, the facts that one of the witnesses has no recollection of the transaction although the other remembers that both witnesses signed together in the presence of the testator and at his request, but neither recollects whether the testator actually said that the instrument was his will or remembers having seen his signature thereto, do not justify denying probate in the circuit court if the other evidence tends to show the will was signed before it was attested and was represented to be the will of the testator.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN McNUTT, Judge, presiding.

ELA, GROVER & MARCH, (MORTIMER C. GROVER, of counsel,) for appellant.

JACOB C. LEBOSKY, for appellees.

Mr. JUSTICE COOKE delivered the opinion of the court:

George C. Karme died at his home in Cook county on September 20, 1913, leaving a paper purporting to be his last will and testament. Probate of this paper was denied both in the probate court and (on appeal) in the circuit court of Cook county. This appeal has been perfected from the order of the circuit court denying probate.

The will purports to have been executed on December 25, 1908, and to have been attested on the same date. The paper is typewritten, with the exception of a few blanks for the insertion of names, addresses and dates, which the undisputed testimony shows were filled in in the handwriting of Karme. The testamentary and attestation clauses, with the signatures appended, are as follows:

"In witness whereof I have hereunto subscribed my name and affixed my seal at No. 128 East Kinzie street, city of Chicago, county of Cook and State of Illinois, this 25th day of December, A. D. 1908, in the presence of Thomas A. Delaney and William Nicholas, whom I have requested to become attesting witnesses hereto.
                                GEORGE CHRISTOPHER KARME."

"The foregoing instrument was subscribed, sealed, published and declared by George Christopher Karme as and for his last will and testament in our presence and in the presence of each of us, and we at the same time at his request, in his presence and in the presence of each other, hereunto subscribe our names and residences as attesting witnesses this 25th day of December, A. D. 1908.
                    THOMAS A. DELANEY, 11 Willis court.
                    WILLIAM NICHOLAS, 1546 Wrightwood ave."

These two clauses were typewritten, with the exception of the names "Thomas A. Delaney" and "William Nicholas" in the testamentary clause, and the date "25th" and "December" appearing in both clauses, which names and dates the uncontradicted evidence discloses are in the hand-

writing of the testator. Delaney and Nicholas were both living at the time of the hearing in the probate and circuit courts and both appeared and testified in the circuit court. Nicholas admitted that his genuine signature was attached to the attestation clause, but he had no recollection of having signed the instrument or of any of the circumstances surrounding its execution and attestation. Delaney testified that he had been associated with Karme in business for twenty years; that he remembered the circumstance of signing his name to the purported will and the fact that Nicholas signed the paper at the same time. He said that Nicholas had been called in and Karme requested them to sign the paper and they signed it at his request; that there was some conversation at the time about the character of the instrument, but he could not recall just what it was. He remembered that he asked Karme if this was his will, or something to that effect, and that together they laughed over the matter, but that Karme did not tell them what the instrument was; that Karme, Nicholas and Delaney were all present when Nicholas and Delaney signed the instrument. This witness further testified that the paper was so folded that he could not see any part of it except the space where he and Nicholas were requested to append their signatures; that he did not see Karme execute the instrument, and Karme did not expressly state to either of them that he had executed it. The witness was under the impression that he was witnessing Karme's will, but could give no reason for that belief except the circumstances under which they were requested to sign the instrument and the fact that the contents of the instrument were concealed from them.

No witnesses were offered except on behalf of the proponents of the will. The two attesting witnesses and one other testified that they were familiar with the handwriting of Karme, and that the signature to the will was his genuine signature and that the various blanks filled in with

a pen were in the handwriting of Karme. Both of the attesting witnesses testified that they did not sign the instrument on December 25, 1908, and Delaney testified that it was signed on the 24th of December.

· George H. Thompson, a son of the sole beneficiary named in the will, who is a resident of Julesburg, Colorado, testified that in November, 1908, he had a conversation at the home of his mother, in Wilmette, with Karme, who was an unmarried man and made his home with Mrs. Thompson, his cousin; that at that time Karme stated he desired to make a will leaving his property to Mrs. Thompson. After stating· that he had no personal attorney it was arranged that upon his return to his home in Julesburg Thompson should get his attorney to draw a will for Karme to execute. Karme gave him directions for the disposition of his property, and the instrument in question was drawn at Julesburg by Thompson under the direction of an attorney there. Thompson himself transcribed the instrument on a typewriter, leaving various blanks for the insertion of names, addresses and dates, and forwarded the same to Karme. Thompson testified that the instrument presented for probate is the same one drawn by him. Various other witnesses testified that Karme had frequently expressed his intention, prior to the date of this will, to devise all his property to Mrs. Thompson, and that after that date he had frequently stated that he had made his will leaving her all his property. The will was found after Karme's death in his safety deposit box, together with his other valuable papers.

Appellees contend that the purported will was properly denied probate for the reason that essential provisions of the statute relating to the execution of wills were not complied with. The law as to what constitutes sufficient proof of the due execution of a will is well settled in this State. It is not necessary that the attesting witnesses remember every circumstance concerning the execution of the will or

every word or act of the testator. Where a will has apparently been executed in due form and the signatures of the testator and the attesting witnesses are admitted to be genuine, no presumption will be indulged to destroy the validity of the instrument but every reasonable presumption will be indulged in favor of its due execution and attestation. In this case the instrument is in due form and contains an attestation clause, which recites that the instrument was subscribed, sealed, published and declared by the testator for his will in the presence of the witnesses, and that they, at his request and in his presence and in the presence of each other, subscribed their names and residences as attesting witnesses. There is nothing in the record which expressly contradicts any of the statements contained in the attestation clause. The signatures of the testator and the attesting witnesses are admittedly genuine. The witnesses signed their names to the instrument at the request of the testator, and the one witness who recalled the circumstance of the attestation of the instrument received the impression from the testator that they were being requested to attest his will.

Where it appears that the signature to the will produced is the genuine signature of the testator and that the two subscribing witnesses signed in his presence, a *prima facie* case is made in favor of the due execution of the will, and this *prima facie* case is not overcome by the mere fact that the subscribing witnesses testify they failed to notice whether the will was signed. (*Gould* v. *Chicago Theological Seminary,* 189 Ill. 282.) In the case just cited, the will, including the attestation clause, was in the handwriting of the testator. In this case two blanks in the attestation clause were filled in by the testator, thus affording evidence that he was familiar with the contents of that clause. In discussing the effect of the recitals of the attestation clause as bearing upon proof of the due execution of a will, we said in the *Gould case:* "Furthermore, the

attestation clause is in the handwriting of the testator. and contains a recital that the will had been signed. All the authorities concur in holding that such attestation is *prima facie* evidence of the due execution of the will, and will often prevail over the testimony of witnesses who give evidence tending to show that some of the requisites were omitted. 'It seems to be well settled that in the absence of all proof, the witnesses being deceased or not in a condition to give testimony, the presumption *omnia rite acta* will arise, as in ordinary cases. * * * And where the attestation clause contains all the particulars of a good execution it will always be *prima facie* evidence of due execution, and will often prevail over the testimony of witnesses who give evidence tending to show that some of the requisites were omitted.'—1 Redfield on Wills,—4th ed.—238; *Thompson* v. *Owen,* 174 Ill. 229."

The facts in *In re will of Barry,* 219 Ill. 391, are very similar to those here involved, and we there held that it was not necessary for the testator to state, or for the subscribing witnesses to know, that the instrument in question was his will, nor was it necessary to acknowledge to them that he had signed it, but it was sufficient if he acknowledged to the witnesses, either by words or acts, that the instrument in question was his act and deed, and we there quoted from *Gould* v. *Chicago Theological Seminary, supra,* as follows: "It is not necessary that the attesting witnesses see the signature of the testator upon the face of the will, that they know the instrument they are witnessing to be a will, or that an acknowledgment of the signature be made to them by the testator. The statutory requirement is satisfied if the testator acknowledge the execution of the will. And such acknowledgment need not be in language. Any act, sign or gesture of the testator will suffice which indicates an acknowledgment of the will with unmistakable certainty."

We think it sufficiently appears that the testator acknowledged to the two witnesses that the instrument in question was his act and deed. It was at his request that they subscribed their names to the instrument and affixed their residences. It is apparent that they were advised, either by the acts or the statements of the testator, that they were witnessing an instrument executed by him, and the actions of the testator were sufficient to give at least one of the witnesses the impression that the instrument was, in fact, a will. It is not surprising that after the lapse of several years a witness may not be able to remember all that transpired at the time of the execution of an instrument, or, indeed, that he does not remember, as was the case with the witness Nicholas, that he even signed the instrument as a witness. Under such circumstances no presumption arises that the instrument was not duly executed, but in such cases as this, where there is no positive proof that the testator failed to comply with any of the formalities required by the statute and where the instrument is in proper form and the signatures are admittedly genuine, if any presumptions are to be indulged they will be in favor of the validity of the instrument.

It is insisted that as one of the witnesses testified that they signed as witnesses on December 24 and the other testified that it could not have been on December 25, as he knew he was not present in the office occupied by Karme on Christmas day, the instrument was not executed by Karme at the time it was attested by the two witnesses. It does not necessarily follow from the mere fact that the date of December 25 was inserted in both the testamentary and attestation clauses that it was on that date, and not the day before, that the testator executed the instrument. From the testimony of these two witnesses it conclusively appears that the date written in the attestation clause is an error, and from all the facts in the case it is fair to presume that the date of December 25 was also erroneously

inserted in the testamentary clause. The attestation clause was signed by these two witnesses, and it was signed on December 24, 1908. All the evidence in the case indicates that the instrument had already been executed by Karme. He had made careful preparation for the execution of his will, and it is apparent that he was familiar with the recitals of the attestation clause. He called in two of his acquaintances to witness the instrument, thus showing that he was familiar with the requirements of the statute. He frequently stated, subsequent to December 25, 1908, that he had made his will deeding the property to Mrs. Thompson. The instrument was properly executed and attested and should have been admitted to probate.

The judgment of the circuit court is reversed and the cause remanded, with directions to admit the instrument to probate.          *Reversed and remanded, with directions.*