(No. 31634.—

IN THE MATTER OF THE ESTATE OF TEODOR BALICKI.— (JOHN F. BALICKI, Appellant, *vs.* VICTOR G. NARDI, Admr., *et al.*, Appellees.)

*Opinion filed January 18, 1951.*

BLACK & BEERMANN, and HERMAN S. LANDFIELD, both of Chicago, (BENJAMIN H. BLACK, of counsel,) for appellant.

MITCHELL KILANOWSKI, CHARLES J. KALETA, and SARSFIELD COLLINS, guardian *ad litem,* all of Chicago, for appellees.

Mr. JUSTICE CRAMPTON delivered the opinion of the court:

The probate court of Cook County refused to admit to probate the alleged will of Teodor Balicki, and the circuit court of that county, after a hearing *de novo,* also denied probate. The instrument purports to dispose of real estate, and John F. Balicki, the proponent of the will and a son of the deceased, has appealed directly to this court. The sole question presented is whether the instrument was signed or acknowledged by the deceased in the presence of the attesting witnesses and by them attested in his presence, in accordance with the statutory requirements for the due execution of wills.

The purported will was prepared in the office of Stanley Krzeminski, an attorney who was also named therein as executor. The attorney testified that on January 12, 1944, between 7:30 and 8:30 in the evening he brought Stanley Zawilinski and John Gierash to the home of decedent for the purpose of acting as witnesses to the will. They went

into the kitchen where he told the witnesses to remain while he went to talk with decedent in his bedroom, which adjoined the kitchen. The deceased was ill and confined to his bed at the time. The attorney testified that he then entered the bedroom and read the will to decedent; that after explaining the terms of the will to decedent's satisfaction he called in the witnesses and introduced them to decedent; and that the latter then signed the will and asked Zawilinski and Gierash to act as witnesses, whereupon both signed the will in his presence and in the presence of each other. After the will was signed and attested, the attorney took it with him and kept it at his office until the testator died some five years later.

Morris Philips, a visitor in the home, testified that after the attorney had been in the bedroom about five or six minutes he came out and asked the witnesses to enter the bedroom; that both of them did so, remaining there for some ten or fifteen minutes, and then came out and left the premises.

The subscribing witnesses both testified they did not go into the bedroom with the attorney but remained in the kitchen sitting at a table; that when the attorney came back into the kitchen he had the will in his hand; that he asked them to sign it and each of them did so; and that they did not see decedent or make any inquiries about him. Gierash testified that when he signed the instrument he noticed the attestation clause appearing above his signature. Zawilinski testified they had no opportunity to read it.

Appellant contends that as the testimony of the subscribing witnesses is inconsistent with the recitations in the attestation clause, it should be viewed with suspicion and should not defeat a probate of the will where other evidence warrants the inference that the requisite formalities were observed. The attestation clause in the present case recited that the instrument was signed, sealed, published and declared by the testator as his last will and testament in the

presence of the witnesses, and that they subscribed their names at his request, in his presence and in the presence of each other. As no question is raised concerning the genuineness of the signatures of the testator and the witnesses, the attestation clause is, as maintained by appellants, *prima facie* evidence of the due execution of the will. (*Brelie* v. *Wilkie*, 373 Ill. 409.) It is not, however, conclusive. It cannot prevail over the positive testimony of both subscribing witnesses that testator did not sign or acknowledge the will in their presence. (*In re Will of Lagow*, 391 Ill. 72.) Nor can this court say that the preponderance of the evidence, including the attestation clause, was contrary to the finding of the probate and circuit judges, who saw and heard the witnesses and had opportunity to observe their demeanor.

*Spangler* v. *Bell*, 390 Ill. 152, involves a factual situation substantially the same as that in the case at bar. A county judge who had drawn the codicil in question testified that the testatrix signed it in his private chambers in the presence of himself and the two subscribing witnesses. The subscribing witnesses, however, testified that they signed the codicil in the county court room, that no one was present at the time except themselves and the judge; and that they did not see the testatrix sign her name to the codicil. In affirming an order denying admission to probate, this court observed that it was reasonable to believe the witnesses would sign the codicil in the absence of testatrix, when directed to do so by the judge who had drawn it. In the case at bar it is likewise reasonable to believe that the witnesses, both laymen unfamiliar with requirements for the proper execution of a will, would sign their names when directed to do so by the attorney, regardless of whether the testator was present at the time.

In support of his argument that the testimony of the subscribing witnesses is unworthy of belief, appellant points to certain discrepancies in what they observed at decedent's

home. The witness Zawilinski, who was sitting with his back to the bedroom door, testified he saw the attorney enter the bedroom. Gierash, on the other hand, was sitting where the door would be within his line of vision, but testified that he saw no bedroom or door leading to a bedroom and that he did not know where the attorney went after they all had entered the kitchen. As a further ground for discrediting the testimony of Zawilinski, who was a real-estate agent, appellant relies upon evidence that at the time the will was signed he held a lease on office space, part of which he sublet to the attorney Krzeminski; that the attorney thereafter obtained a real-estate and broker's license and, upon expiration of Zawilinski's lease, obtained the lease himself, offering to sublet space to Zawilinski; and that, because he thought the attorney was competing with him, Zawilinski refused to remain and moved his office elsewhere. Appellant's position is that this evidence shows a motive for antagonism of the witness toward the attorney for proponent, and affords an explanation for his adverse testimony.

We cannot agree with appellant that these matters are of such a nature as to discredit the entire testimony of the subscribing witnesses. The discrepancies in their testimony are of a minor character, and can well be expected to occur in the testimony of different witnesses given on the same subject after an interval of several years. The evidence that one of the witnesses had severed an association with the attorney for proponent has no tendency to show an interest in this will or in the result of the contest. It is true, as appellant urges, that the testimony of subscribing witnesses who seek to impeach a will is to be received with caution, and may be so inherently improbable and conflicting as to discredit itself. (*Szarat* v. *Schuerr,* 365 Ill. 323.) However, we find nothing in the record tending to indicate such is the case here, or to show any reason why they should testify falsely in the case. The subscribing wit-

nesses were men of good standing in the community, with no motive for testifying to anything other than the truth. The question of the weight to be given evidence in contradiction of the attestation certificate depends upon the credibility of the witnesses and the circumstances of each particular case. Here, the trial judge concluded that the testimony of the attesting witnesses was entitled to greater weight than the evidence contradicting it. There is nothing in the record to show this conclusion to be manifestly wrong, and the order of the circuit court must accordingly be affirmed.

*Order affirmed.*